**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
FILED

AUG 2 6 2026

Nathan Ochsner, Clerk of Court

KEVIN K. HAM,
*Plaintiff,*

v.

WASHINGTON NATIONALS BASEBALL CLUB, LLC,
*Defendant.*

CIVIL ACTION NO. ____________________

**JURY TRIAL DEMANDED**

PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff Kevin K. Ham ("Plaintiff"), appearing pro se, files this Original Complaint against Defendant Washington Nationals Baseball Club, LLC ("Defendant" or "the Nationals"), and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; interference with protected pension rights under Section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140; tortious interference with prospective business relations; and defamation arising from false statements published to a third-party prospective employer concerning Plaintiff's work performance and professional fitness.

## PARTIES

2. Plaintiff Kevin K. Ham is an individual residing in Katy, Harris County, Texas. At the time of the non-renewal challenged in this action, Plaintiff was 50 years old and was employed by the Nationals as an Area Supervisor in amateur scouting, as designated in Item 3 of both of his Major League Club Uniform Employee Contracts.

3. Defendant Washington Nationals Baseball Club, LLC is a Major League Baseball club organized and existing under applicable law. Defendant was Plaintiff's employer during the period relevant to this action. Defendant may be served through its registered agent or as otherwise provided by law.

## JURISDICTION AND VENUE

4. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the ADEA, 29 U.S.C. § 621 et seq., and ERISA, 29 U.S.C. §

1140. This Court has supplemental jurisdiction over Plaintiff's related Texas-law claims under 28 U.S.C. § 1367.

5. Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b) because Plaintiff performed substantial portions of his scouting duties from Katy, Texas, the employment relationship was administered in significant part in this District, and the alleged discriminatory, retaliatory, and economic effects of Defendant's conduct were felt primarily in this District.

6. Plaintiff exhausted the administrative prerequisites applicable to his ADEA and retaliation claims. Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge No. 460-2025-07281. The EEOC issued a Notice of Right to Sue on June 2, 2026. This action is filed within the 90-day period prescribed by 29 U.S.C. § 626(e).

## FACTUAL ALLEGATIONS

### A. Background and Employment History

7. Plaintiff served the Washington Nationals as an Area Supervisor — not "Area Scout" as Defendant's EEOC Position Statement characterizes — until his contract expired on October 31, 2024. His contracted title of Area Supervisor is set forth in Item 3 of both of his Major League Club Uniform Employee Contracts.

8. Plaintiff has thirty-two years of professional baseball experience across three Major League Baseball organizations: the Los Angeles Angels (1999–2016), the San Diego Padres (2016–2021), and the Washington Nationals (2021–2024). He was named Scout of the Year by the Angels (2002) and the Padres (2018), was inducted into the El Paso Baseball Hall of Fame (2014), and graduated in the Top 10 of the MLB Scout School. His 2024 contract provided a base salary of $88,000 plus a $6,000 annual automobile allowance, reflecting a salary that had grown from $82,000 in 2022 to $85,000 in 2023 to $88,000 in 2024 — consistent with recognized performance.

9. During Plaintiff's tenure, the two highest-ranked prospects on the Nationals' own internal prospect board — Dylan Crews (ranked #1, selected 2nd overall in the 2023 MLB Draft) and Travis Sykora (ranked #3, selected in the third round of the 2023 MLB Draft) — both came from Plaintiff's assigned scouting territory of South Texas and Louisiana. Following the 2023 draft meetings, Nationals Scouting Director Kris Kline communicated to Plaintiff that Assistant Scouting Director Eddie Longonez had assessed Plaintiff's presentation and player knowledge as significantly better than all other scouts who presented.

10. On October 13, 2023 — weeks after the conclusion of the 2023 draft in which Crews and Sykora were selected from Plaintiff's territory — Defendant renewed Plaintiff's employment contract for the 2024 season with a salary increase to $88,000. A signed contract renewal with a salary increase, executed with full knowledge of Plaintiff's 2023 performance record, is inconsistent with an assertion that material pre-existing performance concerns already warranted non-renewal.

### B. The Non-Renewal and Absence of Performance Process

11. Plaintiff was 50 years old when the Nationals informed him in approximately late August 2024 that his contract would not be renewed. The notification was delivered by telephone by department heads Danny Haas and Brad Ciolek. When Plaintiff directly asked why his contract was not being renewed, Ciolek responded that they were "not at liberty to disclose that information." No performance-based reason was offered before, during, or after that call.

12. At no point during Plaintiff's three-year tenure with the Nationals was he: (a) provided with a formal performance review; (b) placed on a performance improvement plan; (c) issued a written or verbal warning regarding any performance deficiency; or (d) told that his contract renewal was in jeopardy. Defendant did not utilize a formal, structured performance evaluation process for scouts during Plaintiff's tenure.

13. From approximately August 3 through August 9, 2024 — after the July 31, 2024 date stamped on Defendant's purported Performance Recap — Plaintiff worked the Area Code Games in Long Beach, California, alongside Nationals leadership including Danny Haas, Reed Dunn, and Brad Ciolek. Despite the Recap's stated date, no manager raised the alleged performance deficiencies, discussed the Recap with Plaintiff, requested his signature, or advised him that his employment was at risk during or after that event. These circumstances support an inference that the Recap was not being used as an operative performance document at that time.

14. On September 6, 2024 — five weeks after the Recap's stated date of July 31, 2024, and while Plaintiff's contract remained active through October 31, 2024 — Plaintiff sent a written email to Ciolek, Haas, General Manager Mike Rizzo, and Jason Beckwith of the Nationals organization. In that email Plaintiff stated that he had "only heard speculative reasons from industry sources, none of which relate to my performance or character." Plaintiff also referenced Dylan Crews' MLB call-up and raised concerns about whether the non-renewal process may "border on unfair business practices, antitrust, and labor law violations." Defendant did not respond to this email.

15. Plaintiff made additional documented written contact attempts on September 18, 2024 and October 1, 2024. Defendant did not respond to either.

**C. The Purported 2024 Scouting Performance Recap**

16. In response to Plaintiff's EEOC charge, the Nationals submitted a document titled "2024 Scouting Performance Recap," purportedly dated July 31, 2024. Plaintiff had never seen this document during his employment. It was never delivered to Plaintiff physically or electronically, never verbally referenced, and never mentioned before, during, or after the late August 2024 non-renewal call. The "Leader" signature field on the document is blank — it was never countersigned or certified by any supervisor. Plaintiff alleges that its timing, provenance, and use support a strong inference that it was created or materially altered after Plaintiff's separation, and after the EEOC charge was filed, for the purpose of constructing a post-hoc performance justification.

17. Plaintiff seeks discovery of the native electronic file, complete metadata including creation date, modification date, author fields, version history, and circulation history, and the specific user account, device, and network from which the document was created and last modified.

18. The Recap alleges, among other things, that Plaintiff failed to scout or report on Theo Gillen and Walker Janek. Plaintiff disputes that allegation. Plaintiff's 2024 Preference List, maintained in the Nationals' internal scouting database known as "The Pentagon," ranked Gillen No. 2 and Janek No. 7, with documented submission timestamps. Theo Gillen was selected 18th overall in the 2024 MLB Draft by the Tampa Bay Rays; Walker Janek was selected 28th by the Houston Astros. Neither was drafted by the Washington Nationals. Plaintiff further alleges that West Coast Supervisor Mark Baca has personal knowledge of Plaintiff's coordination of Gillen-related scouting logistics and that Baca communicated to Plaintiff that Gillen was "one of the best HS hitters in the country" following his own evaluation.

**D. Age-Based Pattern of Non-Renewals and Hires**

19. Plaintiff contends that during the 2023–2024 period, the Nationals separated, terminated, or did not renew numerous scouts and baseball-operations employees over age 50 while simultaneously hiring substantially younger employees. Plaintiff's presently assembled data identifies approximately twenty-nine employees over age 50 who were not renewed, with an average age at separation of approximately 58.5 years, and approximately eleven new hires with an average age at hiring of approximately 30.5 years. This stark age disparity is compelling circumstantial evidence of age-based decision making and supports Plaintiff's individual ADEA claim.

20. Plaintiff further alleges that the Washington Nationals are a named defendant in Benedict et al. v. Manfred et al., Case No. 1:23-cv-01563 (D. Colo., filed June 21, 2023), a collective and class action brought by former MLB scouts alleging age discrimination and blacklisting practices across Major League Baseball. Plaintiff does not rely on that separate action as proof of his individual claim, but identifies it as contextual evidence because certain allegations there — including non-renewal of older scouts and alleged barriers to reemployment — are similar in certain respects to the conduct alleged here. The MLB Offset of Employee Compensation Policy is incorporated by reference as an exhibit to Plaintiff's employment contracts.

**E. ERISA and Pension Interference**

21. The Washington Nationals participate in the Non-Uniformed Personnel Pension Plan ("NUPP"), a defined-benefit retirement plan for non-uniformed personnel including scouts and front-office staff. The Nationals are one of only three of the thirty Major League Baseball clubs that participate in the NUPP.

22. At the time of his non-renewal, Plaintiff had accumulated approximately twenty-seven years of credited service across MLB organizations. The NUPP benefit formula provides two percent of Final Average Annual Earnings multiplied by total credited years of service. Each additional year of service with a NUPP-participating club materially increases the lifetime pension benefit. Because only three MLB clubs participate in the NUPP, Plaintiff cannot recover the lost service years or their pension value through employment with any other MLB organization.

23. Plaintiff alleges, on information and belief, that Defendant was aware of Plaintiff's credited service and his proximity to additional pension milestones at the time of the non-renewal decision; that the value of continued NUPP participation was a known and material

component of Plaintiff's overall compensation; and that the timing of Plaintiff's non-renewal at age 50, after twenty-seven years of credited service and while approaching further vesting milestones, supports an inference that interference with Plaintiff's attainment of additional pension benefits was at least a motivating factor in the non-renewal decision. Plaintiff presently estimates the present value of the affected pension opportunity at approximately $1,565,459, based on actuarial projection of forty-two total credited service years, a Final Average Annual Earnings figure of $125,266 projected through age 65, and a discount rate of 3%, subject to confirmation through discovery and expert or actuarial evidence at trial.

F. Protected Activity and Defendant's Written Responses

24. Prior to filing his EEOC charge, Plaintiff made a documented series of complaints and escalations concerning his non-renewal. Plaintiff's March 24, 2025 grievance and later written communications expressly alleged age discrimination and retaliation. The sequence included:

- September 6, 2024: Written email to Ciolek, Haas, Rizzo, and Beckwith raising concerns the non-renewal may "border on unfair business practices, antitrust, and labor law violations." Defendant did not respond.
- September 18 and October 1, 2024: Second and third written contact attempts seeking clarification of the non-renewal. Defendant did not respond to either.
- March 24, 2025: Formal written grievance submitted to General Manager Mike Rizzo alleging age discrimination, defamation, and retaliation, and requesting formal mediation by April 12, 2025. Defendant did not respond by the stated deadline.
- April 14, 2025: Formal written escalation to GM Rizzo, authenticated by DocuSign electronic signature audit trail with a completion timestamp of April 14, 2025 at 15:10:23 UTC, expressly alleging ADEA violations, defamation, retaliation, and breach of good faith.
- April 15, 2025: Written acknowledgment from Betsy Philpott, Chief Legal Officer of the Washington Nationals, confirming that Plaintiff's April 14 escalation had been referred to her for response. This acknowledgment established that Defendant's most senior legal officer had actual, personal, written notice of Plaintiff's age discrimination and retaliation claims as of April 15, 2025.
- April 17, 2025: Written email from CLO Philpott to Plaintiff's mediator and Plaintiff, stating in its entirety: "The Nationals have no interest in mediation or further discussion." This constitutes Defendant's official written institutional response to Plaintiff's formal ADEA discrimination claims, issued three months before Plaintiff's EEOC charge was filed, by the organization's Chief Legal Officer.
- June 10, 2025: Formal written grievance submitted to Major League Baseball's Legal and Human Resources Departments citing age discrimination and retaliation, transmitted via email and USPS Certified Mail with Return Receipt Requested.
- June 20, 2025: Written email from CLO Philpott removing Rizzo, Haas, and Ciolek from all communications and directing all future correspondence exclusively to outside counsel Michael Lorenger of Lorenger & Carnell PLC — the same attorney who subsequently filed Defendant's EEOC Position Statement.

25. These communications establish that Defendant had actual written notice of Plaintiff's age-discrimination allegations no later than April 15, 2025, when its Chief Legal Officer acknowledged receipt of Plaintiff's April 14 escalation. Plaintiff relies on the communications for notice and chronology; he does not contend that Defendant's refusal to mediate, standing alone, establishes liability.

**G. New York Mets Communications and Continuing Professional Harm**

26. Following his separation from the Nationals, Plaintiff pursued prospective employment in Major League Baseball, including with the New York Mets. On or about August 19, 2024, Plaintiff contacted the Mets Scouting Director regarding an open scouting position. On or about September 17, 2024, the Mets Scouting Director confirmed genuine interest in Plaintiff's candidacy and advised that hiring approval was required from the Mets General Manager.

27. Plaintiff alleges that, in or around the period of late August through late September 2024, the Mets General Manager contacted the Washington Nationals directly regarding Plaintiff's candidacy. Following that communication, the Nationals, through one or more agents or representatives, communicated to the Mets that Plaintiff "did not work" or words to substantially that effect. Based on that communication, the Mets declined to proceed with Plaintiff's candidacy.

28. Plaintiff did not discover, and could not through reasonable diligence have discovered, that the Nationals had communicated false and defamatory statements about him to the Mets until Plaintiff independently investigated the circumstances of the Mets' withdrawal of interest. On or about August 6, 2025, Plaintiff directly addressed the Mets Scouting Director regarding the false characterization, confirming that Plaintiff had by that date learned of the substance of the Nationals' communication.

29. The statement that Plaintiff "did not work" is false. Plaintiff is a two-time Scout of the Year across two separate MLB organizations. The Nationals' own highest-ranked internal prospects in 2023 — Dylan Crews and Travis Sykora — both came from Plaintiff's assigned territory. Plaintiff received unsolicited praise from the Nationals' own scouting leadership following the 2023 draft meetings, characterizing his presentation and player knowledge as superior to all other scouts. No formal discipline, warning, or adverse performance documentation was ever communicated to Plaintiff during his tenure. The false characterization is directly contradicted by the objective record of Plaintiff's work.

30. Based on the information presently available to Plaintiff, the Mets communication occurred in or around late August through late September 2024, before Plaintiff's March 24, 2025 written grievance expressly alleging age discrimination. Plaintiff therefore pleads the Mets communication principally as the factual basis for his Texas-law claims for tortious interference and defamation. Plaintiff seeks discovery identifying the speaker, recipient, exact date, substance, and any later republication or reaffirmation of communications by the Nationals to the Mets or any other club concerning Plaintiff's performance, separation, rehire eligibility, or employment candidacy.

**COUNT I – AGE DISCRIMINATION UNDER THE ADEA (29 U.S.C. § 621 et seq.)**

31. Plaintiff incorporates paragraphs 1 through 30 as if fully set forth herein.

32. Plaintiff was 50 years old at the time of his non-renewal and was within the class of individuals protected by the ADEA.

33. Plaintiff was manifestly qualified for his Area Supervisor position, as demonstrated by his two Scout of the Year awards, his scouting of the Nationals' top two 2023 draft picks from his assigned territory, his October 2023 contract renewal with a salary increase, and the unsolicited praise from Nationals scouting leadership following the 2023 draft meetings.

34. Plaintiff suffered an adverse employment action when the Nationals declined to renew his contract effective October 31, 2024.

35. Plaintiff alleges that age was a but-for cause of the decision not to renew his employment, as supported by: (a) the age disparity between the twenty-nine employees over 50 who were not renewed and the eleven new hires averaging approximately 30.5 years of age; (b) the complete absence of contemporaneous performance discipline across three years; (c) the post-hoc introduction of an unsigned, never-disclosed Performance Recap whose metadata may reveal post-charge fabrication; (d) the department heads' refusal to state any reason for the non-renewal when directly asked; (e) the October 2023 contract renewal with a salary increase; and (f) Defendant's status as a named defendant in Benedict et al. v. Manfred et al., Case No. 1:23-cv-01563 (D. Colo.), a federal class action alleging coordinated age discrimination against scouts across all thirty MLB clubs.

36. Plaintiff further alleges that Defendant's violation of the ADEA was willful within the meaning of 29 U.S.C. § 626(b), entitling Plaintiff to liquidated damages equal to the amount of back pay awarded. Willfulness is supported by: (a) Defendant's status as a named defendant in a pending federal age discrimination class action at the time of Plaintiff's non-renewal; (b) the introduction of a post-hoc performance document whose provenance is disputed; and (c) CLO Philpott's written, unequivocal refusal to engage in any mediation or further discussion after receiving formal written notice of Plaintiff's ADEA claims.

## COUNT II – ERISA SECTION 510 INTERFERENCE (29 U.S.C. § 1140)

37. Plaintiff incorporates paragraphs 1 through 36 as if fully set forth herein.

38. The NUPP is an "employee pension benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(2)(A).

39. Plaintiff was a participant in the NUPP within the meaning of ERISA, 29 U.S.C. § 1002(7), by virtue of his employment with the Washington Nationals, one of only three NUPP-participating clubs.

40. Plaintiff alleges that Defendant terminated or declined to renew his employment at least in part for the specific purpose of interfering with Plaintiff's attainment of additional rights and benefits under the NUPP, in violation of 29 U.S.C. § 1140. Specifically: (a) Defendant was aware of Plaintiff's twenty-seven years of credited service and his continued accrual of NUPP benefits as a condition of continued employment; (b) the NUPP is available through only three of thirty MLB clubs, making continued employment with the Nationals uniquely valuable for pension accrual purposes; (c) Plaintiff's non-renewal at age 50 foreclosed fifteen additional years of projected credited service, representing the most economically significant segment of his lifetime pension benefit; and (d) the timing of the

non-renewal decision is consistent with an intent to prevent Plaintiff from attaining those additional benefits.

41. As a result of Defendant's conduct, Plaintiff lost or was prevented from attaining valuable pension benefits estimated at approximately $1,565,459 in present value, subject to expert and actuarial proof at trial. Plaintiff seeks all equitable and other relief authorized by ERISA, including but not limited to pension restoration, make-whole relief, and other appropriate equitable remedies.

**COUNT III – ADEA RETALIATION (29 U.S.C. § 623(d))**

42. Plaintiff incorporates paragraphs 1 through 41 as if fully set forth herein.

43. Plaintiff engaged in activity protected by the ADEA no later than March 24, 2025, when he submitted a formal written grievance expressly alleging age discrimination, and again through his April 14, 2025 escalation, June 10, 2025 grievance to Major League Baseball, EEOC charge, and participation in the EEOC process.

44. Plaintiff does not presently know whether Defendant published, republished, reaffirmed, or circulated the negative characterization of Plaintiff to the Mets or other Major League Baseball clubs after Defendant received notice of Plaintiff's protected activity. The timing, recipients, and substance of those communications are within Defendant's and third parties' possession and are subjects for discovery.

45. To the extent discovery establishes that, after Defendant received notice of Plaintiff's protected activity, Defendant published, republished, reaffirmed, or caused the circulation of false or damaging information about Plaintiff's work or professional fitness in a manner that could dissuade a reasonable employee from opposing age discrimination, Plaintiff alleges such conduct constituted retaliation in violation of 29 U.S.C. § 623(d). Plaintiff pleads this claim in the alternative and does not rely on the presently known 2024 Mets communication alone to establish post-protected-activity retaliation.

46. Plaintiff seeks discovery concerning any post-March 24, 2025 communications by Defendant with MLB, the Mets, or other clubs regarding Plaintiff's performance, separation, rehire eligibility, or candidacy, including the identity of the speaker and recipient, the date, the substance of the communication, and whether any earlier negative characterization was repeated or reaffirmed after protected activity.

47. If post-protected-activity retaliation is established, Plaintiff seeks all relief available under the ADEA and applicable law.

**COUNT IV – TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS (Texas Common Law)**

48. Plaintiff incorporates paragraphs 1 through 47 as if fully set forth herein.

49. There was a reasonable probability that Plaintiff would have entered into an employment relationship with the New York Mets. The Mets Scouting Director confirmed genuine interest in hiring Plaintiff and advised that hiring approval was required from the Mets General Manager.

50. Plaintiff alleges that Defendant intentionally interfered with that prospective relationship by communicating to the Mets, through one or more agents or representatives, that Plaintiff "did not work" or words to substantially that effect, after the Mets sought information concerning Plaintiff's candidacy.

51. Plaintiff alleges that Defendant's conduct was independently tortious because the statement "did not work," or its substantial equivalent in context, was a false statement concerning Plaintiff's work performance and professional fitness that was communicated to a prospective employer and injured Plaintiff in his trade, profession, and occupation.

52. Plaintiff alleges that Defendant either knew the professional characterization was false or acted with reckless disregard for its truth or falsity. Plaintiff further alleges that any qualified privilege applicable to an employment-reference communication was abused by the publication of a knowingly or recklessly false professional characterization.

53. Plaintiff alleges that Defendant's conduct proximately caused the loss of the Mets employment opportunity and resulting damages, including lost compensation, lost benefits, damage to Plaintiff's professional reputation, and ongoing harm to Plaintiff's future employability in the Major League Baseball employment market.

**COUNT V – DEFAMATION**
**(Texas Common Law)**

54. Plaintiff incorporates paragraphs 1 through 53 as if fully set forth herein.

55. Plaintiff alleges that Defendant, through one or more agents or representatives, published to the New York Mets the statement that Plaintiff "did not work," or words to substantially that effect, in connection with the Mets' consideration of Plaintiff for employment.

56. Plaintiff alleges that the statement, understood in the context of an employment-reference communication, conveyed the materially false assertion that Plaintiff failed to perform his professional duties or lacked the work ethic and professional fitness required for employment as a Major League Baseball scout.

57. Plaintiff alleges that the statement was false and defamatory and injured him in his trade, profession, or occupation. Defendant's own records concerning Plaintiff's contract renewal, salary increase, scouting results, and positive supervisory feedback are alleged to contradict the published characterization.

58. Plaintiff alleges that Defendant published the statement with knowledge of its falsity or reckless disregard for its truth or falsity, or alternatively abused any qualified privilege that might otherwise apply to an employment-reference communication.

59. Plaintiff alleges that the publication proximately caused the loss of the Mets employment opportunity, reputational injury, lost compensation and benefits, and continuing professional harm. Plaintiff seeks actual damages and any exemplary damages authorized by Texas law, subject to proof.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kevin K. Ham respectfully requests that this Court enter judgment in his favor and award the following relief:

- Back pay and other lost compensation from the date of non-renewal through the date of judgment, including the $500 monthly automobile allowance provided for in Plaintiff's employment contracts;
- Front pay in lieu of reinstatement for the period through Plaintiff's projected normal retirement age, or reinstatement if the Court deems it appropriate and practicable;
- Liquidated damages under the ADEA equal to the amount of back pay awarded, for Defendant's willful violation of the ADEA;
- Appropriate equitable relief under ERISA Section 502(a), 29 U.S.C. § 1132(a), including pension restoration, make-whole relief, or such other equitable remedy as the Court deems appropriate to address Plaintiff's lost NUPP pension benefits, estimated at approximately $1,565,459 in present value, subject to expert and actuarial proof;
- Actual, consequential, reputational, and compensatory damages on Plaintiff's Texas-law claims for tortious interference and defamation, in an amount to be determined by the jury;
- Exemplary damages on Plaintiff's Texas-law claims, to the extent authorized by applicable law and supported by the evidence;
- Prejudgment and post-judgment interest at the maximum rate permitted by law;
- Costs of court and all other recoverable costs and expenses; and
- All other legal or equitable relief to which Plaintiff may be entitled.

## JURY DEMAND

60. Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Kevin K. Ham
**Kevin K. Ham, Pro Se**
1207 Dominion Dr.
Katy, Texas 77450
Telephone: 346-724-7601
Email: kevin.ham74@gmail.com

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Houston District Office**
1919 Smith Street, 6th Floor
Houston, TX 77002
(346) 327-7700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 06/02/2026

**To:** Mr. Kevin K. Ham
1207 Dominion Dr, Katy, TX, USA
KATY, TX 77450
Charge No: 460-2025-07281

EEOC Representative and email: SHERRITA SMOAK
EQUAL OPPORTUNITY INVESTIGATOR
SHERRITA.SMOAK@EEOC.GOV

---

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 460-2025-07281.

On behalf of the Commission,

Digitally Signed By: Jeremy Crosbie
06/02/2026

Jeremy Crosbie
Deputy District Director

**Cc:**
WASHINGTON NATIONALS BASEBALL CLUB LLC
1207 Dominion Dr, Katy, TX, USA
KATY, TX 77450

Michael Lorenger
Lorenger & Carnell
651 S. Washington St
Alexandria, VA 22314

Wesley Sowell
Punchworlk Law Firm
1 River front Dr #745
NORTH LITTLE ROCK, AR 72114

Please retain this Notice for your records.

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form is approved for use by the Judicial Conference of the United States.

**I. (a) PLAINTIFFS**

| | |
|---|---|
| Kevin K. Ham | Washington Nationals Baseball Club, LLC |
| County of Residence of First Listed Plaintiff: Harris County, Texas | County of Residence of First Listed Defendant: District of Columbia |

**(b) Attorneys (Firm Name, Address, and Telephone Number)**

Kevin K. Ham, Pro Se
1207 Dominion Dr., Katy, TX 77450
346-724-7601 | kevin.ham74@gmail.com

**II. BASIS OF JURISDICTION**

[ ] 1 U.S. Government Plaintiff [ ] 2 U.S. Government Defendant [X] 3 Federal Question [ ] 4 Diversity

**III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)**

Not applicable - jurisdiction is based on federal question.

**IV. NATURE OF SUIT**

**CONTRACT**
110 Insurance
120 Marine
130 Miller Act
140 Negotiable Instrument
150 Recovery of Overpayment & Enforcement of Judgment
151 Medicare Act
152 Recovery of Defaulted Student Loans
153 Recovery of Overpayment of Veteran's Benefits
160 Stockholders' Suits
190 Other Contract
195 Contract Product Liability
196 Franchise
**CIVIL RIGHTS**
440 Other Civil Rights
441 Voting
[X] 442 Employment
443 Housing/Accommodations
445 Amer. w/Disabilities - Employment
446 Amer. w/Disabilities - Other
448 Education
**LABOR**
710 Fair Labor Standards Act
720 Labor/Management Relations
740 Railway Labor Act
751 Family and Medical Leave Act
790 Other Labor Litigation
791 Employee Retirement Income Security Act
**PROPERTY RIGHTS**
820 Copyrights
830 Patent
835 Patent - Abbreviated New Drug Application
840 Trademark
**OTHER STATUTES**
375 False Claims Act
376 Qui Tam (31 USC 3729(a))
400 State Reapportionment
410 Antitrust
430 Banks and Banking
450 Commerce
460 Deportation
470 Racketeer Influenced and Corrupt Organizations
480 Consumer Credit
485 Telephone Consumer Protection Act
490 Cable/Sat TV
850 Securities/Commodities/Exchange
890 Other Statutory Actions
891 Agricultural Acts
893 Environmental Matters
895 Freedom of Information Act
896 Arbitration
899 Administrative Procedure Act/Review or Appeal of Agency Decision
950 Constitutionality of State Statutes

**REAL PROPERTY**
210 Land Condemnation
220 Foreclosure
230 Rent Lease & Ejectment
240 Torts to Land
245 Tort Product Liability
290 All Other Real Property
**PRISONER PETITIONS**
463 Alien Detainee
510 Motions to Vacate Sentence
530 General
535 Death Penalty
540 Mandamus & Other
550 Civil Rights
555 Prison Condition
560 Civil Detainee - Conditions of Confinement
**IMMIGRATION**
462 Naturalization Application
465 Other Immigration Actions
**SOCIAL SECURITY**
861 HIA
862 Black Lung
863 DIWC/DIWW
864 SSID Title XVI
865 RSI

**TORTS**
310 Airplane
315 Airplane Product Liability
320 Assault, Libel & Slander
330 Federal Employers' Liability
340 Marine
345 Marine Product Liability
350 Motor Vehicle
355 Motor Vehicle Product Liability
360 Other Personal Injury
362 Personal Injury - Medical Malpractice
365 Personal Injury - Product Liability
367 Personal Injury - Health Care/Pharmaceutical
368 Asbestos
370 Other Fraud
371 Truth in Lending
380 Other Personal Property Damage
385 Property Damage Product Liability
**FORFEITURE/PENALTY**
625 Drug Related Seizure of Property 21 USC 881
690 Other
**BANKRUPTCY**
422 Appeal 28 USC 158
423 Withdrawal 28 USC 157
**FEDERAL TAX SUITS**
870 Taxes
871 IRS - Third Party 26 USC 7609

**V. ORIGIN**

[X] 1 Original Proceeding [ ] 2 Removed from State Court [ ] 3 Remanded from Appellate Court [ ] 4 Reinstated or Reopened [ ] 5 Transferred from Another District [ ] 6 Multidistrict Litigation - Transfer [ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

29 U.S.C. § 623(a), (d) - Age discrimination and retaliation under the ADEA; related ERISA § 510 claim under 29 U.S.C. § 1140; supplemental Texas-law claims for tortious interference and defamation.

**VII. REQUESTED IN COMPLAINT**

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. DEMAND $ ________________ CHECK YES only if demanded in complaint: JURY DEMAND [X] Yes [ ] No

**VIII. RELATED CASE(S), IF ANY**

None known in the Southern District of Texas.

DATE: ________________ SIGNATURE OF ATTORNEY OF RECORD / PRO SE PLAINTIFF: ________________________

**FOR OFFICE USE ONLY**

RECEIPT # ________________ AMOUNT ________________ APPLYING IFP ________________ JUDGE ________________ MAG. JUDGE ________________